In the Matter of the Estate of HERMANN SIELCKEN, Deceased.

Surrogate's Court, New York County, March 14, 1941.

*Leonard B. Smith* and *Selden Bacon,* for the executor, for the motion.

*I. Gainsburg* [*Samuel Gottlieb* and *Milton Levitan* of counsel], attorney *pro se,* opposed.

FOLEY, S.   The preliminary motion to dismiss the application brought by the attorney for the widow of the testator, the residuary legatee, to fix his compensation under section 231-a of the Surrogate's Court Act, for services rendered and to direct payment thereof out of the general funds of the estate, is granted in the exercise of the discretion of the surrogate and as a matter of law.

The services which are the basis of the petitioner's application were rendered by him in an accounting proceeding of the executor of the estate.   The petitioner was retained by the widow to repre-

sent her. On her behalf, he filed objections to the account and, specifically, to the allowance of certain fees for the services rendered by the attorneys for the estate, for the payment of which the executor sought judicial approval. A trial was had as to the nature of the services and their value and a determination of reasonable allowance made. The amount asked was reduced. (N. Y. L. J. March 15, 1940, p. 1196.)

The petitioning attorney here asserts that the reduction, approximating $70,000, was effected through his efforts and that the services rendered by him were of benefit to the general estate. The surrogate holds that neither the circumstances of this case nor a reasonable construction of the provisions of section 231-a of the Surrogate's Court Act warrant the allowance sought. (*Matter of Parsons*, 121 Misc. 747; affd. on opinion below, 208 App. Div. 769; *Matter of Vorndran*, 132 Misc. 611; *Matter of Chaves*, 143 id. 872; *Matter of Rosenberg*, 147 id. 517; affd., 241 App. Div. 601; *Matter of Hirsch*, 154 Misc. 736; *Matter of Winburn*, 160 id. 49; *Matter of Frame*, 162 id. 34; *Matter of Ziegler*, 170 id. 748.)

In *Matter of Parsons* (*supra*) I explained the purpose of section 231-a of the Surrogate's Court Act, and reviewed the jurisdiction of the Surrogate's Court prior to and subsequent to the enactment of the new section. I there pointed out that with the legislative intent in mind, I could find no authority under the new section " for allowing compensation out of the funds belonging to other persons, to attorneys for one named as a legatee in a paper which failed of probate as the decedent's will. Of course, cases may occur where the services of counsel for a beneficiary resulting in advantage to the estate, may properly justify an allowance out of the estate generally, for example, where compulsory accountings are obtained and funds converted by an executor or administrator are recovered through the efforts of counsel for a beneficiary." The decisions subsequent to *Matter of Parsons* have uniformly followed the rules and policy stated in it. The cases are relatively few where allowances have been made out of the general estate. As stated by Surrogate Schulz, in *Matter of Vorndran* (*supra*), " the court should use great care before it makes such a direction."

In *Matter of Lounsberry* (226 App. Div. 291) certain legatees representing a portion of the estate successfully brought a discovery proceeding through their attorney to compel the delivery of specific assets to the estate, and in *Matter of Hirsch* (*supra*) an action was instituted by an attorney on behalf of a beneficiary of the decedent who succeeded in setting aside fraudulent conveyances of substantially all of the decedent's possessions, with the result that other persons interested in the estate benefited thereby.

In each of these cases funds were brought into the estate. Allowances for the compensation for the services of the successful attorney were properly held to be payable out of the general estate. In neither case, moreover, did it appear that the attorneys for other parties in any way participated in restoring the funds to the estate.

In the pending proceeding, the services of the petitioning attorney were rendered on behalf of his individual client. No funds were brought into the estate. In fact, even with the reduction made by the surrogate of the allowances sought by the executor's attorneys, there still remains payable to them approximately the sum of $50,000. The petitioner contends that the only party appearing who took an active part in resisting the application for the payment and fixation of their allowances was his client, through him and his associate. On the other hand, similar objections were filed by nine other parties who appeared in the proceeding and thereby recorded their opposition. The fact, however, that the successful determination of the contest to the extent indicated, resulted in conferring benefits upon other parties whose attorneys may not have actively participated in the trial, does not justify payment of compensation out of the general estate to the attorney who claims to have held the laboring oar. The cases where objections are interposed to allowances sought by attorneys, either in applications under section 231-a of the Surrogate's Court Act, or in accounting proceedings, are many and frequent. It would be a burdensome expense on the estate where a reduction of the amount of the allowance sought was effected to charge the fees of the opposing lawyer in every such case out of the general estate.

A similar situation was present in *Matter of Ziegler (supra),* where an attorney for an interested party who objected to certain credits set up in an account for disbursements made by the trustees for attorneys' fees, succeeded in a reduction thereof to the extent of approximately $6,000. Surrogate WINGATE, in disallowing an application to fix that attorney's compensation under section 231-a of the Surrogate's Court Act, out of the general assets of the estate, held that there had been no increase of the assets but that they had simply not been decreased by improper charges. He further stated: " The mere fact that the determination of this private controversy resulted in the conferring of a collateral benefit upon third parties by whom the attorney was not retained is insufficient to permit this court to enforce a retainer *in invitum* upon them through the medium of taking some of their money to pay for the services which he rendered on the retainer by his actual client." (Citing *Matter of Loomis,* 273 N. Y. 76, 82; *Nieman-Irving & Co.* v. *Lazenby,* 263 id. 91, 94; *Matter of Attorney-General* v. *North American*

*Life Ins. Co.,* 91 id. 57, 62; *Matter of Frame, supra,* 35; *Matter of Curley,* 161 Misc. 391, 397; *Matter of Winburn, supra,* 52.)

Again, as stated by me in *Matter of Winburn (supra)*: " Certainly no court has ever held that, aside from the award of statutory costs and allowances, the charge of an attorney for a successful party could be imposed directly upon the shares of other parties similarly situated because of their individual rights. The effect of such an attempted charge here would be to impose by judicial fiat the relation of attorney and client where no contract, express or implied, nor any agreement of hiring ever existed."

I hold that the services rendered by the petitioner here are not of such a character as to warrant an allowance to him out of the funds of the estate generally. He must look to the client who retained him for his compensation. She may be reimbursed to some extent by the award of taxable costs, allowable to a successful contestant, under section 278 of the Surrogate's Court Act, upon a proper bill submitted upon the settlement of the final decree in the accounting proceeding. The motion is accordingly granted and the proceeding to fix attorney's fees is dismissed.

Submit order on notice accordingly